THE STATE OF OHIO, APPELLANT, *v.* LACKEY, APPELLEE.

(No. C-800941—Decided October 28, 1981.)

Mr. Simon L. Leis, Jr., prosecuting attorney, *Mr. William E. Breyer* and *Mr. Leo Hildebrandt,* for appellant.
Mr. Martin Wolf, for appellee.

BLACK, J. Defendant was arrested and indicted for carrying a loaded, concealed weapon in violation of R.C. 2923.12. She moved to suppress the weapon because her Fifth Amendment rights against self-incrimination were violated. After an evidentiary hearing, her motion was granted, and the state appealed.

The question presented by the prosecution's single assignment of error may

be stated as follows: May a constitutionally permissible *Terry* search of a suspect held at gunpoint be obviated by the police officer's asking the suspect where the weapon is, without having first given the *Miranda* warnings? The question has not appeared in any published Ohio decision.[1] We answer it in the negative.

Cincinnati Police Officers Higgins and Miller received a radio broadcast close to midnight that a black woman named Brenda Lackey had a gun and was driving a cream-colored Chrysler LeBaron with a designated Ohio license plate on Segar Street, circling a block. (She had threatened another person with the weapon, but this information was not broadcast.) The officers promptly found the car at the described location, stopped it and approached from the rear with their revolvers drawn, Officer Higgins on the driver side and Officer Miller on the passenger side. The driver, who was defendant Brenda Lackey, had to be told twice to place her hands in plain view on the steering wheel, because she hesitated or delayed after the first order. As she raised her hands to the steering wheel, Officer Miller holstered his weapon, opened the passenger door, and entered the car to the extent of placing his knee on the front seat and reaching across to put his hand on the woman's purse, which was on the seat beside her, the top or zippered side against her right leg. He asked where the gun was. She responded, "In my purse." The officer removed the purse from the car and found in it the loaded revolver she is charged with carrying. Meanwhile, Officer Higgins ordered the defendant to get out of the other side of the car, and she was formally arrested for carrying a concealed weapon.

It need hardly be said that prior to the seizure of the weapon, no search warrant had been issued and the officer had not advised the defendant of the series of rights in the manner now generally referred to as the *Miranda* warnings.

The trial court felt that the officers were justified in relying on the radio broadcast to stop the vehicle for investigation, *State* v. *Fultz* (1968), 13 Ohio St. 2d 79 [42 O.O.2d 259], and that they would have been justified in making a pat-down, *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383], but that they did not have probable cause for an arrest and that Officer Miller violated defendant's rights under the Fifth Amendment, when, having deprived defendant of her freedom in a significant way, he asked an inculpatory question without having first stated the *Miranda* warnings. For the latter reason, the court suppressed the weapon under the exclusionary rule. We come to a different conclusion.

The officers properly relied on the information in the broadcast, *State* v. *Fultz, supra,* and would have been justified in making a pat-down search despite the strictures of the Fourth Amendment.

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is *armed and presently dangerous* to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (Emphasis added.) *Terry* v. *Ohio,* 392 U.S. at 24.[2]

The essence of the rationale for a *Terry* search was expressed as follows in

---

[1] Inculpatory statements voluntarily made to the police, not as the result of interrogation, but before *Miranda* warnings could reasonably have been given, are admissible. *State* v. *Perry* (1968), 14 Ohio St. 2d 256 [43 O.O.2d 434]. In the instant case, however, there was interrogation to the extent of the single question about the location of the gun.

[2] We are of the opinion that when law enforcement personnel are confronted at close range with an individual they reasonably believe is armed, they may, with equal reason,

*Adams* v. *Williams* (1972), 407 U.S. 143, 146:

"A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

We have upheld pat-downs in such situations,[3] although we have not upheld the search of a woman's purse.

If *Terry* circumstances exist and a pat-down would be permissible under the Fourth Amendment, we believe that it is permissible under the Fifth Amendment for the police officer then and there to address a question to the suspect for the protection of the officer and other persons in the vicinity, without prior *Miranda* warnings. The essence of *Miranda* is the assurance through a procedural safeguard that the privilege against self-incrimination will be protected and scrupulously honored. 384 U.S. at 478-479. The privilege, however, is not absolutely predominant, and is subject to the same balancing test of reasonableness to which other highly valued constitutional rights are subject. We are impressed with the statement of the Supreme Court of Washington in *State* v. *Lane* (1970), 77 Wash. 2d 860, 467 P.2d 304, 306:

"Accordingly, we hold that it is not a violation of either the letter or the spirit of *Miranda* for police to ask questions which are strictly limited to protecting the immediate physical safety of the police themselves and which could not reasonably be delayed until after warnings are given."

Six other states[4] and one federal circuit[5] have come to similar conclusions.

We hold, therefore, that as an exception to the rule of *Miranda,* an accused's privilege against self-incrimination is not violated when a police officer, without having given the *Miranda* warnings, asks where is the weapon in order to protect himself and others, in those circumstances when he is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous." *Terry* v. *Ohio, supra,* at 24. In so holding, we are aware that the question is directed at that same possession of a weapon which forms the core element of the crime with which the suspect will be charged, and that the question has value in producing evidence for the prosecution. Nevertheless, we believe that the primary con-

---

assume that he or she is "presently dangerous." Repeated experiences of confrontations with armed subjects demonstrate that the officer is in jeopardy of life and limb and must proceed with the utmost caution. Therefore, we hold it is not necessary that the officer know as a matter of fact that the accosted individual is "presently dangerous" independently of the belief that he has a weapon on his person or ready at hand. Justification to believe the suspect possesses a weapon furnishes reasonable cause to believe he is "presently dangerous."

[3] *State* v. *Bryant* (Mar. 12, 1980), No. C-790220, unreported; *State* v. *Barnes* (June 20, 1979), No. C-780655, unreported; *State* v. *Phelps* (May 30, 1979), No. C-780537, unreported; *State* v. *Smith* (May 23, 1979), No. C-780419, unreported; *State* v. *Posey* (Nov. 2, 1977), No. C-76711, unreported.

[4] *Pope* v. *State* (Ala. Crim. App. 1980), 387 So. 2d 300; *Ballew* v. *State* (1969), 246 Ark. 1191, 441 S.W.2d 453; *People* v. *Richard* (1978), 89 Cal. App. 3d 477, 152 Cal. Rptr. 787; *People* v. *Mullins* (1975),188 Colo. 23, 532 P. 2d 733; *People* v. *Toler* (1973), 45 Mich. App. 156, 206 N.W.2d 253; *People* v. *Ramos* (1969), 17 Mich. App. 515, 170 N.W.2d 189; and *State* v. *Hall* (1970), 4 Ore. App. 30, 476 P. 2d 930.

We note also the case of *People* v. *Brown* (1970), 131 Ill. App. 2d 244, 266 N.E.2d 131, in which the inculpatory answer was excluded but the weapon was admitted in evidence.

[5] *United States* v. *Castellana* (C.A. 5, 1974), 500 F. 2d 325.

cern of protecting persons against surprise attack justifies a minor infringement of the privilege against self-incrimination.

The single assignment of error has merit. We reverse the suppression order appealed from and remand this case for further proceedings.

*Judgment reversed*
*and case remanded.*

SHANNON and PALMER, JJ., concur.