Present:  All the Justices

JERALD LORENZO JACKSON

v. Record No. 031867  OPINION BY JUSTICE CYNTHIA D. KINSER
                                  April 23, 2004
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA


Relying on a tip from an anonymous informant, a police officer conducted an investigatory stop of an automobile in which the defendant was a passenger.  The issue is whether the information from the anonymous caller, corroborated in part by police officers' observations, provided reasonable articulable suspicion to justify the investigative traffic stop.  We conclude that it did not and that, therefore, evidence seized from the defendant during a subsequent search should have been suppressed by the trial court.

PRIOR RELEVANT PROCEEDINGS

The appellant, Jerald Lorenzo Jackson, was indicted in the Circuit Court for the City of Newport News for possession of cocaine in violation of Code § 18.2-250, and possession of a firearm while in possession of a controlled substance in violation of Code § 18.2-308.4(A).  He was also charged with a misdemeanor, possession of a concealed

weapon in violation of Code § 18.2-308.[1]  Jackson filed a

pretrial motion to suppress evidence, specifically a

firearm and cocaine, seized during a warrantless search of

his person.  He asserted that the police did not have a

reasonable articulable suspicion justifying the

investigative traffic stop.  The trial court denied the

suppression motion and convicted Jackson of the charged

offenses.

Jackson appealed his convictions to the Court of

Appeals of Virginia.  That court affirmed the convictions

and the judgment of the circuit court.  Jackson v.

Commonwealth, 39 Va. App. 624, 576 S.E.2d 206 (2003).  Upon

granting Jackson's petition for a rehearing en banc,

Jackson v. Commonwealth, 40 Va. App. 88, 578 S.E.2d 51

(2003), the Court of Appeals again affirmed the

convictions, Jackson v. Commonwealth, 41 Va. App. 211, 583

S.E.2d 780 (2003).  We awarded Jackson this appeal limited

to the question whether the circuit court erred in denying

Jackson's pretrial motion to suppress.

RELEVANT FACTS

At approximately 2:10 a.m. on June 17, 2001, M. A.

Cook, a police officer with the City of Newport News Police

---

[1] The misdemeanor charge was on appeal to the circuit
court.  See Code § 16.1-132.

2

Department, received a dispatch, based on information from an anonymous caller, regarding a firearm. According to Officer Cook, "[u]nits were dispatched to 34th [Street] and Jefferson [Avenue]. . . . in reference to three black males in a white Honda that were disorderly and one of the subjects brandished a firearm." There was a small bar and a gasoline station situated at that location. As Officer Cook was approaching the specified intersection approximately five minutes after receiving the dispatch, he observed a white Honda automobile that was occupied by three black males. The vehicle was leaving the gasoline station and "pulled out right in front of" Officer Cook, allowing the headlights of his vehicle to shine into the window of the Honda automobile. At that point, Officer Cook executed a "U-turn" and proceeded to follow the Honda automobile until other police units arrived. He then executed a traffic stop, causing the automobile to pull into the parking lot of a fast-food restaurant. Officer Cook approached the driver of the vehicle and explained the reason for the traffic stop. The defendant was sitting in the front passenger seat of the vehicle.

Sergeant James Hogan, another police officer who responded to the dispatch, assisted Officer Cook in the traffic stop. Sergeant Hogan approached the stopped Honda

3

vehicle from the rear and moved up to the front door on the passenger side. He then shined his flashlight into the vehicle and spotted Jackson sitting in the front passenger seat.

The defendant had his arms folded across his stomach, but Sergeant Hogan noticed a bulge in Jackson's shirt under his arms just above the waistband of his pants. According to Sergeant Hogan, "[the] bulge . . . obviously was not part of [Jackson's] body[;] . . . it was too big" to be anything other than a firearm. Sergeant Hogan asked Jackson if he had a firearm, and Jackson responded, "No." Sergeant Hogan requested Jackson to move his hands, but Jackson just raised his hands and put them back on his stomach. Sergeant Hogan then asked Jackson to pull his shirt up, but Jackson merely pulled his shirt out a few inches and then put it back, placing his arms back across his stomach.

Due to Jackson's unwillingness to cooperate with Sergeant Hogan's requests, Sergeant Hogan pulled his firearm out of its holster, pointed it at Jackson, and directed him to get out of the vehicle. As Jackson was doing so, Officer Brendan D. Bartley, who was standing behind Sergeant Hogan, reached around Jackson and removed a firearm from the waistband of Jackson's pants. The firearm

4

was underneath Jackson's shirt.  Officer Bartley handcuffed Jackson and proceeded to search him subsequent to arrest. During that search, Officer Bartley found four, individually wrapped "rocks of cocaine" in the left pocket of Jackson's pants.

Officer Cook acknowledged that the driver of the Honda automobile was not violating any traffic laws and that he would not have stopped the vehicle except for the dispatch. He also did not have any information other than what was contained in the original dispatch to the police officers. Similarly, Sergeant Hogan knew of no efforts to confirm the information received by the dispatcher.  Like Officer Cook, he saw the white Honda automobile and it matched the description of the vehicle for which they were looking. So, Sergeant Hogan turned his police vehicle around and followed Officer Cook, who was pursuing the white Honda automobile.  Likewise, Officer Bartley responded to the original dispatch and saw the white Honda vehicle turning southbound on Jefferson Avenue.  He did, however, testify that he had a clear vision of the entire parking lot at the small bar and he did not see another white Honda automobile there.

ANALYSIS

The Fourth Amendment protects "persons" from "unreasonable searches and seizures." U.S. Const. amend. IV. An investigatory stop (sometimes referred to as a "Terry stop"), such as the traffic stop at issue in this case, constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979); see United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993). Consequently, such action by a police officer "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Hassan El, 5 F.3d at 729; see Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)("stop of an automobile . . . is unreasonable under the Fourth Amendment absent a reasonable, articulable suspicion that the driver is unlicensed or that the automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law"); United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999) ("An investigative stop does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity.") If evidence is seized during an illegal stop,

6

it is not admissible at trial under the doctrine known as "the fruit of the poisonous tree." Hassan El, 5 F.3d at 729; see Wong Sun v. United States, 371 U.S. 471 (1963). The issue we decide in this appeal is whether the anonymous tip together with the police officers' observations of the white Honda automobile and its occupants provided reasonable articulable suspicion to justify the investigative traffic stop.

In deciding that issue and reviewing the trial court's denial of Jackson's motion to suppress, we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial. Bass, 259 Va. at 475, 525 S.E.2d at 924. Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements. McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); see Ornelas v. United States, 517 U.S. 690, 696-97 (1996). The Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible. Simmons v. Commonwealth, 238 Va. 200, 204,

7

380 S.E.2d 656, 659 (1989). However, a defendant must show, when viewing the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress evidence was reversible error. McCain, 261 Va. at 490, 545 S.E.2d at 545; Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

The constitutionality of the traffic stop in this case turns on whether the anonymous tip sufficed to give rise to reasonable suspicion. Reasonable suspicion is something "more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). However, it is something less than probable cause. Bass, 259 Va. at 475, 525 S.E.2d at 923. In Alabama v. White, 496 U.S. 325, 330 (1990), the Supreme Court of the United States explained that

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

The "totality of the circumstances," which includes "the content of information possessed by police and its degree of reliability," i.e. "quantity and quality," must

8

be considered when determining whether reasonable suspicion exits.  Id.  "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."  Id.; see also Illinois v. Gates, 462 U.S. 213, 233 (1983) ("a deficiency in one [the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability").  The converse is likewise true.  See State v. Rutzinski, 623 N.W.2d 516, 522 (Wis. 2001) ("if there are strong indicia of the informant's veracity, there need not necessarily be any indicia of the informant's basis of knowledge").

The interplay between an informant's reliability and the informant's basis of knowledge is illustrated by comparing the decision in Alabama v. White, 496 U.S. 325, with the decision in Adams v. Williams, 407 U.S. 143 (1972).  In the former case, the police received a telephone call from an anonymous informant who stated that the defendant would leave a particular address "at a particular time in a brown Plymouth station wagon with the right taillight lens broken," would drive to a named motel,

9

and would be in possession of cocaine inside a brown attaché case.  White, 496 U.S. at 327.  The police proceeded to the specified address where they observed both the automobile as described by the informant and the defendant as she left the building and drove away in the automobile.  Id.  The police followed the vehicle as it proceeded along the most direct route to the named motel.  Id.  The police stopped the defendant's vehicle shortly before it reached the motel and conducted a consensual search of the station wagon.  Id.  During the search, the police found the brown attaché case, which contained marijuana.  Id.  They also discovered cocaine in the defendant's purse.  Id.  At trial, the defendant moved to suppress the evidence seized during the search on the basis that the police officers did not have a reasonable suspicion justifying the initial investigative stop.  Id. at 327–328.

Although the Supreme Court described White as a "close" case, it concluded "that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop" of the defendant's vehicle.  Id. at 332.  The Court acknowledged that the police officers had not verified every detail mentioned by the anonymous caller

but that they had corroborated certain facts, including that a woman had left a particular building, had gotten into the described automobile, and had driven along the most direct route toward the named motel.  Id. at 331.  The Court stated that it was "important that . . . 'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' "  Id. at 332 (quoting Gates, 462 U.S. at 245).  The Court explained that the police officers' finding an automobile exactly as the anonymous caller had described in front of a particular building was an example of readily obtained facts which anyone could have known.  Id. at 332.  However, "[w]hat was important was the caller's ability to predict [the defendant's] future behavior, because it demonstrated inside information – a special familiarity with [the defendant's] affairs" that the general public would have no way of knowing.  Id.  Once the police verified the caller's predictions, it was reasonable to conclude that the caller had reliable information about the defendant's illegal activities.  Id.  That "basis of knowledge" provided the anonymous caller with sufficient indicia of reliability to justify the investigatory stop.  Id. at 329.

11

In contrast, the decision in Adams v. Williams turned on the informant's veracity rather than the informant's basis of knowledge. There, an informant approached a police officer and stated that "an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist." 407 U.S. at 144-45. The informant was personally known by the police officer and had provided him with information in the past. Id. at 146. Based on the informant's tip, the police officer approached the vehicle and, when the defendant rolled down the window, the officer reached into the vehicle and removed a fully loaded firearm from the defendant's waistband. Id. at 145. The firearm was not visible to the police officer from outside the automobile, but it was located precisely where the informant had indicated. Id. During a subsequent search incident to arrest, police officers found heroin, a machete, and another firearm. Id.

Emphasizing that the police officer personally knew the informant and had received information from him in the past, the Supreme Court concluded that the officer "acted justifiably in responding to his informant's tip." Id. at 146. The Court stated that this case was "stronger" than one involving "an anonymous telephone tip" because "[t]he informant here came forward personally to give information

that was immediately verifiable at the scene." Id. Also important in the Court's analysis was the fact that the informant might have been subject to immediate arrest for making a false complaint had the officer's investigation proved the tip to be false. Id. at 147.

This analysis brings us to the Supreme Court's most recent case involving an anonymous informant, Florida v. J. L., 529 U.S. 266 (2000). There, an anonymous caller reported to the police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." Id. at 268. There was no audio recording of the call, and the police did not know anything about the caller. Id. Proceeding on the information provided by the informant, the police went to the bus stop and observed three black males there. Id. One of them, J. L., was wearing a plaid shirt. Id. Apart from the anonymous tip, the police did not observe any suspicious behavior, nor did the officers see a firearm. Id. Nevertheless, "[o]ne of the officers approached J. L., told him to put his hands up on the bus stop, frisked him, and seized a gun from J. L.'s pocket." Id. J. L. was charged with carrying a concealed weapon without a license and possessing a firearm while under the age of 18. Id. at 269. At trial, he moved to suppress the introduction of the firearm that was seized

from him on the basis that it was "the fruit of an unlawful search." Id.

The question presented to the Supreme Court was whether the anonymous tip pointing to J. L. had the required indicia of reliability as enunciated in Adams and White. Id. at 270. In J. L., the officers' suspicion that the defendant was carrying a concealed weapon came not from their own observations "but solely from a call made from an unknown location by an unknown caller." Id. Thus, the Court concluded that, unlike a tip such as the one in Adams where the informant was known and could be held responsible if the allegations were proven to be false, " 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " Id. (quoting White, 496 U.S. at 329).

The tip concerning J. L. also lacked the indicia of reliability present in White because the anonymous caller did not provide any "predictive information" which the police could use to test the informant's basis of knowledge or credibility. Id. at 271. The fact that the informant provided an accurate description of an "observable location and appearance" served only to "help the police correctly identify the person whom the tipster [meant] to accuse." Id. at 272. The reasonable suspicion at issue in J. L. was

14

whether the informant was reliable in the assertion of concealed criminal activity, "not just in [the tip's] tendency to identify a determinate person." Id. Thus, since all the police had in J. L. was "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L.," the Court concluded that the investigatory stop and ensuing search were unconstitutional. Id. at 271.

The Court also rejected a "firearm exception" to its well-established reliability analysis. Such an exception would allow a stop and frisk when a tip alleges an illegal firearm even if the tip lacked sufficient indicia of reliability. Id. at 272. But, the Court pointed out that it was not saying that there could never be "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability," such as information that a person is carrying a bomb. Id. at 273.

Turning now to the case before us, we agree with the statement that "[r]arely are the facts of two cases as congruent as the facts in J. L. and this case." Jackson, 41 Va. App. at 240, 583 S.E.2d at 795 (Benton, J., dissenting). As in J. L., Officer Cook had nothing more to

go on than an anonymous, unaccountable informant who neither explained how he knew that Jackson was brandishing a firearm nor furnished any basis for believing that he had inside knowledge about Jackson.  Both the "quantity and quality" of the information supplied to the police here lacked sufficient indicia of reliability to justify the investigatory stop.  Nor did the police officers observe any suspicious behavior once they spotted the white Honda automobile.

Unlike the informant in Adams, the caller in this case was not known to the police nor did he or she personally appear before an officer.  Thus, the informant was not subjecting himself or herself to possible arrest if the information provided to the dispatcher proved false.  See Code § 18.2-461.  In other words, the informant was not placing his or her credibility at risk and could "lie with impunity."  J. L., 529 U.S. at 275 (Kennedy, J., concurring).  There also is no evidence that the caller had supplied information on any previous occasions.  When, as in this case, there are virtually no indicia of the informant's veracity, more information is required in order "to establish the requisite quantum of suspicion than would be required if the tip were more reliable."  White, 496 U.S. at 330.

16

The tip in this case, however, also lacked sufficient information to demonstrate the informant's basis of knowledge and to establish the "requisite quantum of suspicion." Id. The Court of Appeals correctly noted that Officer Cook verified six details reported by the informant: the make and color of the vehicle; its location; and the number, race, and gender of the vehicle's occupants. Jackson, 41 Va. App. at 229, 583 S.E.2d at 789. Based on the officer's verification of these details, the Court of Appeals concluded that it was objectively reasonable for the officer to believe "that the remaining portion of the tip − that one of the suspects had brandished a firearm only moments before − was likewise true." Id. We do not agree. The tip included only "easily obtained facts and conditions existing at the time of the tip" which anyone could have known, including the allegation of brandishing a firearm. White, 496 U.S. at 332. It failed to include the kind of details critical to the Supreme Court's analysis in White, predictions about the defendant's future behavior. Such details are important because they demonstrate "inside information" that would not be available to the public generally. Id.

Thus, as in J. L., "[t]he anonymous call . . . provided no predictive information and therefore left the

17

police without means to test the informant's knowledge or credibility." 529 U.S. at 271. That the officers in fact found a gun when they searched Jackson does not mean that, prior to the search, they had a reasonable basis for believing that Jackson had engaged in criminal conduct. See id. Even when an informant reports the commission of an open and obvious crime, if the tip is truly anonymous and provides no explanation for how the informant acquired the information, i.e., the informant's basis of knowledge, there remains a "layer of inquiry respecting the reliability of the informant that cannot be pursued." J. L., 529 U.S. at 275 (Kennedy, J., concurring).

The Court of Appeals distinguished this case from J. L. and found the tip here

> "reliable in its assertion of illegality" because this tip – unlike the "carrying a gun" tip in J.L. – provided information permitting the officers reasonably to infer that it (i) came from a concerned citizen making a contemporaneous eyewitness report, (ii) involved an open and obvious crime rather than mere concealed illegality,[2] and (iii) described criminality posing an imminent danger to the public.

---

[2] The Court of Appeals stated that "[w]hen an anonymous caller reports an open and obvious crime . . . , the Fourth Amendment may require no showing that the caller have inside information about the suspect capable of predicting his future conduct." Jackson, 41 Va. App. at 227, 583 S.E.2d at 788. In support of that assertion, the court, in a footnote, cited its decision in Beckner v. Commonwealth, 15 Va. App. 533, 535, 425 S.E.2d 530, 531 (1993). However, in Beckner, it was not necessary for the informant to have

18

_Jackson_, 41 Va. App. at 235, 583 S.E.2d at 792 (quoting _J. L._, 529 U.S. at 272) (internal citation omitted). However, the first factual predicate is not supported by the record, the second factor does not distinguish this case from _J. L._, and the third element was rejected by the Supreme Court in _J. L._

As to the Court of Appeals' conclusion that this tip came from a concerned citizen making an eyewitness report, the record contains the testimony of two police officers concerning the dispatch that directed them to proceed to 34th Street and Jefferson Avenue. Officer Cook stated that "[w]e were dispatched in reference to three black males in a white Honda [who] were disorderly and one of the subjects brandished a firearm." Sergeant Hogan testified that he was backing up Officer Cook "on a call that someone was brandishing a firearm and that they were getting, he and two other guys were getting into a car and leaving." This testimony is the police officers' recitation of the information reported to them by the police dispatcher. The dispatcher did not testify nor is there any evidence that

---

predicted future action by the defendant because the informant had "a face-to-face confrontation with the police officer." _Id._, 425 S.E.2d at 532. Thus, the informant had subjected himself to possible prosecution if he gave false information.

the informant's call was audio-recorded or its content preserved in some other manner.

Thus, even when viewing the police officers' testimony in the light most favorable to the Commonwealth and imputing the dispatcher's knowledge to the officers, see Feathers v. Aey, 319 F.3d 843, 849 (6th Cir. 2003), there simply is no evidence from which a reasonable inference can be drawn that the informant in this case was a concerned citizen making an eyewitness report as a crime was being committed as opposed to a prankster or someone with a grudge against Jackson.  The informant provided no details about himself or herself, cf. State v. Williams, 623 N.W.2d 106, 114 (Wis. 2001) (informant provided "self-identifying information"); no descriptive facts showing that he or she personally observed the firearm instead of having received information from another person; and no time frame for when the illegal activity was observed, cf. United States v. Thompson, 234 F.3d 725, 727 (D.C. Cir. 2000) (tipster stated that he "just saw" the defendant with a gun).[3]  In other words, the anonymous informant here provided no basis for his or her knowledge.

---

[3]  The evidence showed only that Officer Cook arrived at the scene approximately five minutes after receiving the dispatch.

Implicit in the second factor central to the Court of Appeals' holding is its statement that one fact alone distinguishes this case from J. L., that the informant here asserted specific illegal activity while the informant in J. L. made no assertion of illegality. However, as the dissent noted, "[i]f . . . the issue in J. L. concerned the failure of the informant's tip to convey evidence of criminal conduct, the resolution of that case would not have required any discussion about the informant's reliability." Jackson, 41 Va. App. at 242, 583 S.E.2d at 796 (Benton, J., dissenting). Moreover, the Supreme Court rejected any suggestion that a report of illegal conduct justifies a stop and frisk: "[t]he mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a Terry stop without meeting the reliability requirement." 529 U.S. at 273 n. *. The Court made no distinction between concealed criminal conduct and open, obvious criminal activity.

Additionally, as already discussed, the police here had no way to test the anonymous informant's basis of knowledge and to determine his or her reliability. The informant did not provide, contrary to the Court of Appeals' conclusion, any "first-person, present-tense" details of the alleged illegal conduct. Jackson, 41 Va.

21

App. at 233, 583 S.E.2d at 791.  See, e.g. Rutzinski, 623 N.W.2d at 519 (unidentified motorist reported, by cellular phone, erratic driving by another motorist and that he or she was in the vehicle in front of the swerving pickup). Nor did the informant provide any information about the defendant's future behavior.  We do not suggest that every anonymous tip must include predictive information, see United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001) ("the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions as in the case of erratic driving witnessed by another motorist"); but, even when an informant reports open and obvious criminal conduct, sufficient indicia of reliability must be present before a stop and frisk is justified.

Finally, with regard to the Court of Appeals' reliance on the imminent danger to the public, the Supreme Court declined to carve out a "firearm exception" to its established reliability requirements for anonymous tips. J. L. 529 U.S. at 272.  The Court stated that "an automatic firearm exception . . . would rove too far" because it "would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely

22

reporting the target's unlawful carriage of a gun." Id. See also Harris v. Commonwealth, 262 Va. 407, 416, 551 S.E.2d 606, 611 (2001) (a police officer's "hunch" that the defendant was trespassing could not be raised to the level of reasonable suspicion based on an anonymous informant's assertion that the defendant was armed; the Commonwealth could not "bootstrap[] the legitimate concern for law enforcement officers' safety, which permits a protective search of a legally detained suspect, to serve as the basis for detaining the suspect").

Nor are we persuaded by the cases relied on by the Commonwealth and the Court of Appeals. Those cases are either inapposite or involved tips that contained indicia of reliability not present here. For example, Wheat, 278 F.3d 722; State v. Walshire, 634 N.W.2d 625 (Iowa 2001); Rutzinski, 623 N.W.2d 516; and State v. Boyea, 765 A.2d 862 (Vt. 2000), all addressed the reliability of anonymous reports of erratic or drunk drivers. That circumstance and the imminent public danger associated with it are not factors in this case. As the court in Boyea recognized, "a drunk driver is not at all unlike a 'bomb,' and a mobile one at that." 765 A.2d at 867. We agree that "[i]n contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on

23

the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action." Id.

Continuing, in Williams, 623 N.W.2d 106, the informant was not truly anonymous. There, the caller identified her location; indeed, she referred to it as "my house." Id. at 114. The court concluded that the informant had provided "self-identifying information" and therefore put her "anonymity at risk." Id. "Risking one's identification intimates that, more likely than not, the informant is a genuinely concerned citizen as opposed to a fallacious prankster." Id. at 114-15. Similarly, the informant in Rutzinski "exposed him – or herself to being identified" because the informant told the police "that he or she was in the vehicle in front of Rutzinski's pickup." 623 N.W.2d at 525.

### CONCLUSION

Under the totality of the circumstances presented here, the anonymous tip lacked sufficient indicia of reliability to justify the investigatory stop of the vehicle in which Jackson was a passenger. Thus, the stop was illegal as well as the subsequent search of Jackson's person. Therefore, we hold that the trial court erred in refusing to grant Jackson's pre-trial motion to suppress

24

the evidence seized from him.  Accordingly, we will reverse the judgment of the Court of Appeals and dismiss the indictments against Jackson.

<u>Reversed and dismissed.</u>