COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


JOSEPH A. MOSES HARRIS, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2320-06-2                      JUDGE SAM W. COLEMAN III
                                                        FEBRUARY 5, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Bradley B. Cavedo, Judge

            Karen L. Stallard, Supervising Appellate Defender (Office of the
            Public Defender, on briefs), for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Jonathan M. Larcomb, Assistant
            Attorney General, on brief), for appellee.


        Joseph A. Moses Harris, Jr. appeals from his bench trial conviction for driving while

intoxicated after previously having been convicted of two like offenses.  On appeal, he contends he

was unlawfully stopped based on an anonymous tip that was not sufficiently corroborated and,

thus, that the trial court erroneously denied his motion to suppress.  We hold the evidence

supports the trial court's ruling, and we affirm his conviction.

                                    I.  BACKGROUND

        Shortly before 6:30 a.m. on December 31, 2005, while it was still dark, "a call was

dispatched from the department of communications [to Richmond Police Officer Claude Picard]

that there was a[n] intoxicated driver in the 3400 block of Meadowbridge Road," that his name

was "Joseph Harris, and he was driving a[] [green] Altima headed south, towards the city,

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

possibly towards south side." The dispatch included "a partial tag" of "Y8066" and information that "the driver was wearing a striped shirt." The dispatch stated the telephone call containing this information was received at 6:23 a.m., but it included nothing indicating who had made the telephone call or from what source that person had obtained the information reported.

While receiving the dispatch, Officer Picard turned onto Meadowbridge Road traveling in a northerly direction and soon saw a green Altima heading south, the direction reported by dispatch, in the 3200 block of Meadowbridge Road. Officer Picard made a u-turn to follow the vehicle. The vehicle's license plate number, YAR-8046, "was similar" to the partial plate number of "Y8066" Picard had received from dispatch.

As Officer Picard followed the Altima, it did not swerve or exceed the 25 mile-per-hour speed limit, but it braked in a manner that Officer Picard described as "erratic." It led him to believe that the driver was intoxicated. As the Altima approached the "uncontrolled" intersection of Highland View and Meadowbridge Road at which "[it] would not have had to stop," it "started to stop with its brake lights activated as though [the driver] was coming to a stop at that intersection," but "[it] didn't fully stop and proceeded forward." Next, as the vehicle approached the traffic light at the intersection of Meadowbridge Road and Brookland Park Boulevard, which was red, it braked "50 feet prior to the intersection," causing "its rear brake light [to come] on," but "[i]t didn't come to a complete stop." The brake lights went out, the car "just kept moving" "forward," and then the brake lights came on again "when [the car] came to the stop bar" beneath the red light at Meadowbridge and Brookland Park.

When the traffic light turned green, the vehicle proceeded through the intersection and the driver then drove to the side of the road and stopped of his own accord. At that point, Officer Picard had not determined whether the driver was male or was wearing a striped shirt as reported by the caller, but after the vehicle had pulled over and stopped, Officer Picard "went ahead and

activated his emergency light equipment so the driver would know that I wasn't going around him, that I was actually initiating a traffic stop." The detention occurred at approximately 6:30 a.m., about seven minutes after the anonymous call was received.

Harris moved to suppress the evidence, arguing Officer Picard corroborated only the innocent details of the tip and lacked reasonable suspicion for the stop. The Commonwealth made three alternative arguments against suppression. It argued first that dicta involving drunk driving offenses in the decision of the Virginia Supreme Court in Jackson v. Commonwealth, 267 Va. 666, 594 S.E.2d 595 (2004), permitted a seizure of the driver reported to be intoxicated without corroboration of the anonymous tip. It argued second that, even if corroboration of the tip was required, Officer Picard had sufficient corroboration for the stop based on his observations of the vehicle's erratic braking. It argued third that the vehicle's erratic braking, standing alone, provided probable cause for a traffic stop for improper driving.

The trial court accepted the Commonwealth's second argument and denied the motion to suppress based on its conclusion that Officer Picard's observations of Harris's driving sufficiently corroborated the anonymous tip to provide reasonable suspicion for a stop. The trial court found that because of the specificity of the details in the tip, it "has the ring of reliability to it." It noted that Picard saw the same make and color of the reported car in the vicinity of Meadowbridge Road with a license plate that "was close" to the number reported by the anonymous tipster, "the tag being correct in at least three digits and a letter." In commenting upon Officer Picard's observations that, in his view, established the reliability of the tip, the trial court ruled:

> [Picard] didn't make the stop [when he first spotted the vehicle]. He followed and observed to see if there was something else that could be detected that might justify reasonable and articulable suspicion to make a stop, and what he observed was the vehicle slowing down, braking at intersections - - at an intersection at which there was no obligation to do so, where there was no stop

- 3 -

sign or stoplight, and then braking at an intersection in which there was an obligation to do so, but doing so 50 feet or so short of the stop bar at a red light, as I understand the testimony.

In my view, after observing those things and seeing the other aspects of the tip or the call to police, confirmed by his own observation, except, of course the name of the driver, and I think the officer said he did not see whether he was wearing the correct shirt or not at that point. I believe he had reasonable and articulable suspicion to make the stop and investigat[e] a drunk driving dispatch or call or complaint, so I'm going to deny the motion to suppress.

Following a bench trial, Harris was convicted and sentenced, and he noted this appeal.

## II. DISCUSSION

The sole issue on appeal is whether, based on the anonymous tip received from the dispatcher and Officer Picard's subsequent personal observations, Picard had reasonable suspicion to seize or detain Harris while he was parked on the side of the road.

On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view

> the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial. Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.

Jackson, 267 Va. at 672, 594 S.E.2d at 598 (citation omitted).

An officer may conduct a brief investigatory stop of an individual if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it. Terry v. Ohio, 392 U.S. 1, 30 (1968). "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level

- 4 -

required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). Nevertheless, an "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000) (quoting Terry, 392 U.S. at 27); see Arvizu, 534 U.S. at 274.

Whether an officer has reasonable suspicion for a Terry stop is based on an assessment of the totality of the circumstances, "which includes 'the content of information possessed by police and its degree of reliability,' i.e., 'quantity and quality.'" Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). When the factual basis for probable cause or reasonable suspicion is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances analysis. Illinois v. Gates, 462 U.S. 213, 230 (1983); see White, 496 U.S. at 328-31. For example,

> "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." [White, 496 U.S. at 330]; see also [Gates], 462 U.S. [at 233] ("a deficiency in one[, the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge,'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability").

Jackson, 267 Va. at 673, 594 S.E.2d at 599.

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" Florida v. J.L., 529 U.S. 266, 270 (2000) (quoting White, 496 U.S. at 329). "The fact that [an] informant provide[s] an accurate description of an 'observable location and appearance' serve[s] only to 'help the police correctly identify the person whom the tipster [means] to accuse.'" Jackson, 267 Va. at 676, 594

S.E.2d at 600 (quoting J.L., 529 U.S. at 272).  Such information does little to establish "whether the informant [is] reliable in the assertion of concealed criminal activity, 'not just in [the tip's] tendency to identify a determinate person.'"  Id. (quoting J.L., 529 U.S. at 272).

Nevertheless, situations exist "in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop.'" J.L., 529 U.S. at 270 (quoting White, 496 U.S. at 327).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

White, 496 U.S. at 330, quoted with approval in Jackson, 267 Va. at 673, 594 S.E.2d at 599.  Compare Gates, 462 U.S. at 242-46 (holding that the predictive nature of a detailed tip regarding the defendants' interstate travel plans, coupled with extensive police corroboration of suspicious circumstances "ordinarily not easily predicted," provided probable cause for a search warrant for their car, despite the anonymity of the tipster), with White, 496 U.S. at 330-32 (where an anonymous tip predicted that the defendant would leave a specified apartment in a particular car at a designated time and drive with a brown attaché case containing cocaine to a nearby motel, and police confirmed these activities, except for the defendant's name and possession of the attaché case and cocaine, and stopped the defendant "just short of [the specified] [m]otel," the case was "close" but provided reasonable suspicion for a Terry stop), and United States v. Campbell, 920 F.2d 793, 794-97 (11th Cir. 1991) (holding, under Gates, that where the reliability of the confidential informant was not established independently, mere confirmation of the tip that a woman with whom the informant allegedly had been working would arrive in Montgomery with three Mexican males via a specified highway in a green-and-white Chevrolet pickup truck with Texas license plates and stop at a specified truck stop between 11:30 p.m. and 1:00 a.m.

may have provided reasonable suspicion for an investigatory stop but did not provide probable cause for an arrest or search).

The corroboration may be from innocent behavior or details, Gates, 462 U.S. at 243 n.13, but innocent information must be sufficiently predictive so as to establish "the informer's knowledge or credibility," J.L., 529 U.S. at 271; see Jackson, 267 Va. at 677-80, 594 S.E.2d at 601-03. "[W]hen an informant reports open and obvious criminal conduct," a lesser degree of corroborative information may be required to provide the tip with "sufficient indicia of reliability" to justify a Terry stop. Jackson, 267 Va. at 680, 594 S.E.2d at 603 (suggesting that "'the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions as in the case of erratic driving witnessed by another motorist'" (quoting United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001))).

Here, the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that Officer Picard had reasonable suspicion to effect a brief detention of Harris. Officer Picard not only confirmed numerous innocent details, such as the description of the car, the direction it was traveling, and the fact that it bore a license plate very similar to the partial plate number reported by the informant, but he also observed driving behavior corroborating the tipster's allegation that the driver of the vehicle was intoxicated. Officer Picard saw appellant apply his brakes in an "erratic" fashion at least twice in a short period of time, which Picard testified "led [him] to believe" Harris was, in fact, driving while intoxicated, as the anonymous informant had reported. After proceeding through the controlled intersection, Harris drove his car to the roadside and stopped of his own accord after Officer Picard had been following in his patrol car. We hold Officer Picard's observations, combined with the anonymous tip, provided reasonable suspicion for a brief investigatory detention of Harris, who

had already voluntarily brought his car to rest on the side of the road before Officer Picard initiated the Terry stop.

The facts of this case as found by the trial court are clearly distinguishable from those in J.L., 529 U.S. 266, and Jackson, 267 Va. 666, 594 S.E.2d 595, two anonymous tipster cases relied upon by Harris to support a reversal of his conviction. In both J.L. and Jackson, each of which involved a report of an individual brandishing a firearm or carrying one in a concealed fashion, the investigating officers confirmed only the respective tipster's "description of [the individual's] 'observable location and appearance,'" which, as set out above, "served only to '. . . identify the person whom the tipster [meant] to accuse'" and did not establish "whether the informant was reliable in the assertion of concealed criminal activity." Jackson, 267 Va. at 676, 594 S.E.2d at 600 (quoting J.L., 529 U.S. at 272). In neither J.L. nor Jackson were the officers able to obtain, prior to effecting a Terry stop, any information corroborating the tipster's report that the individual had brandished a firearm or was carrying one in a concealed fashion. See J.L., 529 U.S. at 268; Jackson, 267 Va. at 677, 594 S.E.2d at 601.

In Harris's case, by contrast, Officer Picard testified that, after spotting a green Altima traveling in the direction reported by the tipster and bearing a license plate that partially matched the one reported, he also observed the driver intermittently braking in an "erratic" manner and slowing at inappropriate situations which he believed supported the tipster's report that the driver was intoxicated. Officer Picard's observations of Harris's driving and the fact that Harris drove to the roadside and stopped of his own accord after Officer Picard had followed in his patrol car supported the trial court's finding that Officer Picard sufficiently corroborated the criminal component of the anonymous informant's tip before he pulled in behind Harris's already-stopped vehicle and activated his flashing lights to investigate further. Under these circumstances it was reasonable for Officer Picard to suspect that Harris was intoxicated thereby justifying the

minimally intrusive stop of activating his lights and siren after Harris had stopped of his own accord.

Accordingly, we uphold the trial court's denial of Harris's motion to suppress and we affirm the challenged conviction.

<u>Affirmed.</u>