COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Powell and Senior Judge Coleman
Argued at Richmond, Virginia


KENNETH LEE SMITH

                                                    MEMORANDUM OPINION BY[*]
v.       Record No. 0924-08-2          JUDGE SAM W. COLEMAN III
                                                         JUNE 16, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

Shaun R. Huband (Office of the Public Defender, on brief), for
appellant.

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kenneth Lee Smith was convicted following a jury trial of robbery and use of a firearm in

the commission of a felony.  On appeal, Smith asserts his statutory right to a speedy trial was

violated and that the trial court erred by denying his motion to suppress.  For the reasons that

follow, we disagree and affirm the trial court's decision.

I.

Background

Police arrested appellant on April 15, 2007, on charges of robbery, use of a firearm

during the commission of a felony, and possession of marijuana.

Following a preliminary hearing on May 21, 2007, the general district court certified the

robbery and use of a firearm charges to the grand jury.  Over the following several months, while

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appellant remained in jail, the case was continued numerous times. During that time the parties appeared before the court for various motions, including a motion to suppress.

On November 29, 2007, the trial court entered an order setting the case for a jury trial on January 14, 2008. Appellant's counsel, who was present when the court set the trial date, lodged no objection. At the time, the trial court confirmed that appellant's counsel represented him on all three charges. Also, appellant's counsel and the Commonwealth's attorney advised the court that all motions had been heard and ruled upon and the parties were ready for trial. Again, at the December 7, 2007 setting of the docket, the trial court entered an order, without objection by appellant's counsel, that continued the case to January 14, 2008.

On December 26, 2007, appellant's counsel moved to dismiss the charges for violation of his statutory right to a speedy trial, which motion the trial court denied. On January 14, 2008, appellant was tried by a jury and convicted of robbery and the firearm charge.

Analysis

> "'When an accused asserts that he has been denied a speedy trial, the burden is on the Commonwealth to explain and excuse the delay.'" "The Commonwealth must prove that the delay [in commencing trial] was based on one of the reasons enumerated [or implied] in [Code § 19.2-243] or on [the accused's] waiver . . . of his right to be tried within the designated period." "If the Commonwealth fails to meet these burdens, the statute requires discharge of the prosecution."
>
> In assessing the merits of appellant's statutory speedy trial claim, we "review . . . the whole record and . . . consider[] . . . the trial court['s] orders in the context of the record that comes before us."

Jiron-Garcia v. Commonwealth, 48 Va. App. 638, 645, 633 S.E.2d 744, 748 (2006) (citations omitted).

Code § 19.2-243 provides in part:

> Where a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he

- 2 -

is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court . . . .

If there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused, the commencement of the running of the five and nine months periods, respectively, set forth in this section, shall be from the date an indictment or presentment is found against the accused.

If an indictment or presentment is found against the accused but he has not been arrested for the offense charged therein, the five and nine months periods, respectively, shall commence to run from the date of his arrest thereon.

\*    \*    \*    \*    \*    \*    \*

The provisions of this section shall not apply to such period of time as the failure to try the accused was caused:

\*    \*    \*    \*    \*    \*    \*

4. By continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth . . . .

\*    \*    \*    \*    \*    \*    \*

For the purposes of this section, an arrest on an indictment or warrant or information or presentment is deemed to have occurred only when such indictment, warrant, information, or presentment or the summons or capias to answer such process is served or executed upon the accused . . . .

"The five month requirement of Code § 19.2-243 translates to 152 and a fraction days."

Ballance v. Commonwealth, 21 Va. App. 1, 6, 461 S.E.2d 401, 403 (1995). "The defendant's

statutory right to a speedy trial [is] not violated [where] he affirmatively agree[s] to the trial date

that was set beyond the time period prescribed by [Code § 19.2-243]." Hudson v.

Commonwealth, 267 Va. 36, 42, 591 S.E.2d 679, 682 (2004). "The defendant's failure to object

to the court's action in fixing the trial date is an acquiescence in the fixing of a trial date beyond

the five-month speedy trial period and constitutes a continuance of the trial date under Code § 19.2-243(4)." Heath v. Commonwealth, 261 Va. 389, 394, 541 S.E.2d 906, 909 (2001). "When the triggering event occurs — such as when the defendant or his counsel agrees either to a continuance or to an original trial date outside the parameters of Code § 19.2-243 or fails to object to same — the statutory time limit is tolled." McCray v. Commonwealth, 44 Va. App. 334, 343, 605 S.E.2d 291, 295 (2004).

### Robbery

The statutory time period within which the Commonwealth had to try appellant on the robbery charge began to run on May 22, 2007, the day after the general district court found probable cause and certified the robbery charge to the grand jury. The appellant was continuously held in custody from the date of his arrest on that charge until his trial on January 14, 2008. "Thus, absent excusable delay [or waiver of appellant's statutory speedy trial right] resulting in the tolling of the statute, the Commonwealth was required to commence trial on or before [October 20, 2007]." Jiron-Garcia, 48 Va. App. at 646, 633 S.E.2d at 748. The record establishes that excusable delay occurred and that appellant acquiesced in the setting of the trial date outside the parameters of Code § 19.2-243, and, therefore, his statutory right to a speedy trial was not violated by commencing trial on January 14, 2008.

On August 20, 2007, with no objection from appellant's counsel, the trial court granted the Commonwealth's motion to continue the case until August 28, 2007, to allow the Commonwealth time to respond to appellant's briefs. Then, on August 28, 2007, the case was again continued on joint motion until September 20, 2007, at which time it was to be scheduled for a jury trial. On October 16, 2007, on joint motion of the parties, the trial court again continued the case to November 15, 2007 to allow time for further investigation. Thus, the statutory time limit was tolled during these three time periods totaling sixty-one (61) days.

On November 29, 2007, at a time when the statutory speedy trial period had not expired, appellant agreed and acquiesced in the trial court setting the case for a jury trial on January 14, 2008, a date beyond the time period of Code § 19.2-243, after taking into account the periods of excusable delay.  Appellant's counsel not only did not object to the continuance and scheduling of the trial, but in fact agreed to continuing the case until January 14, 2008.  Accordingly, the trial court did not err in denying appellant's motion to dismiss the robbery indictment.

<u>Use of a Firearm in the Commission of a Felony</u>

The statutory time period within which the Commonwealth was required to try appellant on the firearm charge began to run on September 1, 2007, the day after his arrest following a direct indictment for that charge.  <u>See</u> Code § 19.2-243.  After his arrest the appellant was continuously held in custody until his trial on January 14, 2008.  "Thus, absent excusable delay [or waiver of appellant's statutory speedy trial right] resulting in tolling of the statute, the Commonwealth was required to commence trial on or before [January 30, 2008]."  <u>Jiron-Garcia</u>, 48 Va. App. at 646, 633 S.E.2d at 748.  Since appellant was tried on that charge on January 14, 2008, no statutory speedy trial violation occurred.

II.

Appellant contends the trial court erred in denying his motion to suppress all evidence obtained in violation of the Fourth Amendment as a result of his detention, the investigation, and his arrest based upon an anonymous tip that was insufficient to form a reasonable articulable suspicion of criminal activity or probable cause.

<u>Background</u>

When we review a trial court's denial of a motion to suppress, "'[t]he burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  <u>McGee v. Commonwealth</u>, 25 Va. App. 193,

197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).  On appeal of a denial of a motion to suppress, we consider the evidence adduced at the hearing on the motion to suppress as well as the evidence adduced at trial.  DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

So viewed, the evidence proved that on April 15, 2007, Deug Kang, the owner of Best Laundromat, was robbed of money at gunpoint.  Within minutes after the robbery, Officer William Bergamini responded to the laundromat.  Bergamini testified that Kang described the robber as tall, with a dark complexion, dressed in a black flight jacket with a fur hood, and wearing a New York Yankees baseball cap.  Officer Lawrence Costello, who also responded to the laundromat, testified that Kang described the robber as a tall, black male wearing a white t-shirt and a Yankees hat.

At the pretrial suppression hearing, Kang testified that he told police the robber was a black male with a dark complexion, who was slim and tall, and wearing blue jeans, a red plaid half-jacket with a hood, and a Yankees baseball cap.  In that hearing Kang later stated, in response to questioning, that the robber had on a black jacket.  In his trial testimony, Kang said that he described the jacket as black not red plaid.  Kang testified that he also told police the robber fled in the direction of the Landmark Apartments located about fifty to seventy-five yards across the street from the laundromat.

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'"  McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (quoting Quantum Div. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991)).

At the scene, Bergamini also spoke to Alonzo Sabree, who was at the laundromat during the robbery. Sabree described the robber as a black male, approximately six-feet two inches tall, with a dark complexion, wearing a blue and white plaid shirt. Sabree also stated that the robber was holding a brown manila envelope with what appeared to be the butt end of a handgun partially exposed. Sabree testified he described the robber to police as wearing blue jeans and a hooded jacket with fur around the hood.

At the scene, Costello also spoke with Marcita Wilkins, a customer who was in the laundromat just prior to the robbery. Wilkins told Costello that a tall black male wearing a dark blue Yankees cap and a white shirt stated to her, "You don't want to be in here because I'm about to do something, and I don't want you in here." Wilkins testified that she told police the person who had talked to her was wearing a plaid shirt, a "New York" cap, and a jacket.

While the officers were in the laundromat's parking lot, Bergamini received a call from dispatch informing him that an anonymous tip had been received advising that the person who had just robbed the laundromat is a black, tall male with a dark complexion, whose name is "Kenny," and who can be found at 9-C Stately Court.

When the police went to 9-C Stately Court, a short time after having received the dispatch, Bergamini first encountered Rosalind Epps, who consented to Bergamini's request to search the apartment. The search found no other persons there. When Bergamini told Epps why they had come to her apartment, she told Bergamini that a black male named "Kenny" could be found at the apartment next door, 9-D Stately Court.

Bergamini then went to the 9-D Stately Court apartment, knocked on the door, and was met by a middle-aged woman and a younger female, who were "less than cooperative." Bergamini asked if anyone else was in the apartment, and the older female said no. When he asked if she knew anyone named "Kenny," the older lady stated, "I have a son named Kenny."

Bergamini asked if Kenny was there, and the younger female responded, "[L]et me check."

Within seconds, Bergamini heard a male voice, and then immediately heard heavy footsteps coming down the stairs. Bergamini saw a tall, black, dark-complected male, hurriedly running down the stairs. The man immediately tried to slam the door on the police. When the police pushed back, the man turned and ran towards the back of the apartment. Other police officers stationed at the back door of the apartment apprehended him and placed him in handcuffs. As police brought the appellant back through the apartment, they saw a dark blue New York Yankees cap in the living room and took possession of it. Appellant was wearing a white t-shirt and dark denim pants. Bergamini testified that approximately twenty minutes had elapsed from when they received the anonymous tip to when they apprehended appellant.

After appellant was apprehended, the officers took Kang and Wilkins to the apartments to determine whether they could identify appellant as the robber. Kang could not positively identify appellant because he said the clothing was different. At first, Wilkins was unable to identify appellant, but after police placed the New York Yankees cap on him and Wilkins heard appellant's voice, she stated she could positively identify appellant as the person who spoke to her in the laundromat.

Investigatory Detention

An officer may conduct a brief investigatory stop of an individual if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it. Terry v. Ohio, 392 U.S. 1, 30 (1968). "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). Nevertheless, an "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or

"hunch'" of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000) (quoting Terry, 392 U.S. at 27); see Arvizu, 534 U.S. at 274.

Whether an officer has reasonable suspicion for a Terry stop is based on an assessment of the totality of the circumstances, "which includes 'the content of information possessed by police and its degree of reliability,' i.e., 'quantity and quality.'" Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 599 (2004) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). When the factual basis for probable cause or reasonable suspicion is provided by an informer, the informer's (1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall totality-of-the-circumstances analysis. Illinois v. Gates, 462 U.S. 213, 230 (1983); see White, 496 U.S. at 328-31. For example,

> "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." [White, 496 U.S. at 330]; see also [Gates], 462 U.S. [at 233] ("a deficiency in one[, the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge,'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability").

Jackson, 267 Va. at 673, 594 S.E.2d at 599.

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [his or] her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" Florida v. J.L., 529 U.S. 266, 270 (2000) (quoting White, 496 U.S. at 329). "The fact that [an] informant provide[s] an accurate description of an 'observable location and appearance' serve[s] only to 'help the police correctly identify the person whom the tipster [means] to accuse.'" Jackson, 267 Va. at 676, 594 S.E.2d at 600 (quoting J.L., 529 U.S. at 272). Such information does little to establish "whether the informant [is] reliable in the assertion of concealed criminal activity, 'not just in [the tip's] tendency to identify a determinate person.'" Id. (quoting J.L., 529 U.S. at 272).

- 9 -

Nevertheless, situations exist "in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop.'" J.L., 529 U.S. at 270 (quoting White, 496 U.S. at 327).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

White, 496 U.S. at 330, quoted with approval in Jackson, 267 Va. at 673, 594 S.E.2d at 599.

The corroboration may be from innocent behavior or details, Gates, 462 U.S. at 243 n.13, but innocent information must be sufficiently predictive so as to establish "the informer's knowledge or credibility," J.L., 529 U.S. at 271; see Jackson, 267 Va. at 677-80, 594 S.E.2d at 601-03. "[W]hen an informant reports open and obvious criminal conduct," a lesser degree of corroborative information may be required to provide the tip with "sufficient indicia of reliability" to justify a Terry stop. Jackson, 267 Va. at 680, 594 S.E.2d at 603 (suggesting that "'the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions as in the case of erratic driving witnessed by another motorist'" (quoting United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001))).

Here, the evidence, viewed in the light most favorable to the Commonwealth, established that the officers had reasonable suspicion to effect a brief investigatory detention of appellant. The Landmark Apartments were located directly across the street from the laundromat, only fifty to seventy-five yards away, and police had information from an eyewitness that the robber was observed fleeing towards those apartments. The police also possessed detailed descriptions of the robber's appearance and his clothing from three eyewitnesses when they received the anonymous tip identifying a man named "Kenny" as having committed the robbery only twenty minutes earlier. That tip included descriptive information of the robber's race, height, and

complexion, which was consistent with the witnesses' descriptions. The tip told police that the person who had just robbed the laundromat approximately twenty minutes earlier could be found at 9-C Stately Court, which was located in the Landmark Apartments, an area to which an eyewitness had seen the robber flee.

When the police arrived at apartment 9-C, they learned that "Kenny" did not live there. However, they determined from the occupant, Epps, that "Kenny" could be found at the apartment next door, 9-D Stately Court. When police went to apartment 9-D, two women answered the door. Although they were not cooperative, the officers learned that one of the women had a son named "Kenny," and the other woman agreed to determine whether "Kenny" was in the apartment. Shortly thereafter, a tall, black, dark-complected male, wearing a white t-shirt and jeans, an appearance consistent with the witnesses' and the tipster's descriptions, ran down the stairs and attempted to slam the door on the police. When the police pushed back, appellant ran to the back of the apartment attempting to flee, but officers waiting at the back door took him into custody.

Assuming that appellant's seizure constituted a detention, we hold that the police possessed the requisite reasonable suspicion to justify a brief detention of appellant to allow them to investigate whether the eyewitnesses could identify "Kenny" as the robber. In so holding, we rely upon the totality of the circumstances, including the information provided by the three witnesses to the officers at the laundromat, the information from the anonymous informer, the officers' observations, and evidence obtained at the apartments.

The facts of this case are distinguishable from J.L, 529 U.S. 266, and Jackson, 266 Va. 666, 594 S.E.2d 595, the cases relied upon by appellant. In those cases, which both involved a report of an individual brandishing a firearm or carrying one in a concealed fashion, the investigating officers confirmed only the respective tipster's "description of [the individual's]

'observable location and appearance,'" which "served only to '. . . identify the person whom the tipster [meant] to accuse'" and did not establish "whether the informant was reliable in the assertion of concealed criminal activity." Jackson, 267 Va. at 676, 594 S.E.2d at 600 (quoting J.L., 529 U.S. at 272). In neither J.L. nor Jackson were the officers able to obtain, prior to effecting the Terry stop, any information corroborating the tipster's report that the individual had brandished a firearm or was carrying one in a concealed fashion. See J.L., 529 U.S. at 268; Jackson, 267 Va. at 677, 594 S.E.2d at 601.

In this case, by contrast, the anonymous tip was not the sole basis for the investigatory detention. Here, the police possessed detailed descriptions of the robber from three witnesses, some of which were consistent with the description of the robber provided by the anonymous tipster. Appellant's appearance when observed at the apartment was consistent with the descriptions from the witnesses. Additionally, the robber was seen fleeing to the Landmark Apartments, located directly across the street from the laundromat, which tended to corroborate the anonymous tipster's information that the robber could be found at one of those apartments. Thereafter, when the police went to the apartments they learned that a person named "Kenny" could be found at apartment 9-D. When they went to 9-D and confirmed that a person named "Kenny" lived there, a black male, having an appearance consistent with the witnesses' and tipster's descriptions of the robber, tried to forcibly close the door on them. Unable to do so he then tried to flee from the apartment. At that point, the officers had sufficiently corroborated the anonymous informant's tip and had reason to suspect that appellant was the person who had been involved in the criminal activity. Thus, the officers were justified in briefly detaining appellant to investigate further and to allow the eyewitnesses to determine whether they could identify him as the robber.

Appellant also argues the police lacked probable cause to arrest him after his initial detention because "most of the information following [his] detention pointed away from probable cause to justify an arrest [for robbery]."

Probable cause does not "deal with hard certainties, but with probabilities." Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (citation omitted). Nor does it "demand any showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "prima facie showing" of criminality is required. Gates, 462 U.S. at 235 (citation omitted).

Instead, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243 n.13. "By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." Gates, 462 U.S. at 243 n.13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Id.

At the time of his arrest, the police had received the anonymous tip linking appellant to the crimes, had observed appellant attempt to flee, located a cap matching a description of the cap the robber wore inside the residence where he was found, and had obtained an eyewitness

identification of appellant as the robber. The totality of the circumstances provided the officers with probable cause to arrest appellant for the robbery.

Accordingly, the trial court did not err in denying appellant's motion to suppress.

<u>Affirmed.</u>